UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BARRY J. BRETT and LESLIE BRETT,

                        Petitioners,

-against-

JAROSLAWICZ & JAROS PLLC and ELIZABETH EILENDER,

                        Respondents.

**OPINION & ORDER**

15 Civ. 2921 (ER)

Ramos, D.J.:

Petitioners Barry J. Brett and Leslie Brett ask this Court to determine under N.Y. Judiciary Law § 475 the value of a charging lien held by their former counsel, Respondents Jaroslawicz & Jaros PLLC and Elizabeth Eilender. Petitioners argue that Respondents were discharged as counsel prior to the conclusion of the case and are therefore entitled only to the *quantum meruit* value of the legal services they rendered. Respondents argue that they were never discharged by Petitioners and the charging lien should therefore be enforced in the amount of $191,966.66, the one-third contingency fee they were entitled to collect under their original retainer agreement. For the reasons set forth in this opinion, it is ORDERED that the charging lien in favor of Respondents is fixed in the amount of $191,966.66.

## I. BACKGROUND

On February 28, 2015, Petitioner Barry J. Brett ("Brett") swallowed a 2.5 cm wire bristle with a bite of his meal at DB Bistro Moderne, a popular New York City restaurant. *See* Am.

Compl. ¶¶13–16. Brett underwent emergency surgery to extract the bristle, which had become lodged in his throat. Am. Compl. ¶18. He was then confined to a hospital Intensive Care Unit, where he underwent an extensive course of antibiotic treatment. Am. Compl. ¶18. To prosecute a claim for the damages he suffered, Brett and his wife retained Elizabeth Eilender, a lawyer at the law firm Jaroslawicz & Jaros PLLC ("J&J"). Resp'ts' Ex. 1, at 1. Brett signed a retainer agreement with J&J for Eilender's services on March 23, 2015. Resp'ts' Ex. 1, at 5. The agreement provided that Eilender would be compensated for her services one-third of the gross sum recovered, with J&J paying all costs and expenses. Resp'ts' Ex. 1, at 2. Appellate services were specifically excluded from the scope of the contract. Resp'ts' Ex. 1, at 5.

Pursuant to the retainer agreement, Eilender represented the Bretts in a negligence and products liability action against DB Bistro Moderne ("Defendant"). Eilender represented the Bretts during all pretrial proceedings and at the jury trial, which took place from the 24th to the 27th of October 2016. The jury returned a verdict in favor of the Bretts and awarded them $285,790.92 in compensatory damages and $1,000,000 in punitive damages. J. 1–2, Nov. 18, 2016. Defendant's counsel promptly notified the court of his intention to challenge the award of punitive damages post-trial. Trial Tr. 464:15–23.

The Bretts and Eilender got along up to and during the trial. Hr'g Tr. 73:2–6, Oct. 4, 2017. After the trial, however, a series of events led their relationship to sour. First, Brett and Eilender disagreed over whether to approach Defendant to settle. Days after the jury verdict was announced, Brett urged Eilender to approach Defendant with a settlement proposal he drafted. Hr'g Tr. 21:15–23, Oct. 4, 2017. Eilender did not do so, thinking that approaching Defendant unprompted might compromise the Bretts's bargaining position. Hr'g Tr. 22:18–23:4, Oct. 4, 2017. Responding to an email in which Eilender laid out her reasoning, Brett requested that David

Jaroslawicz, a partner at J&J who was familiar with the case, call Brett to discuss the possibility of settlement. Pet'rs' Ex. 2, 3. No settlement offer was made by Eilender.

Second, Brett and Eilender disagreed over whether to file a motion for reargument on the issue of future damages. On November 14, 2016, this Court issued an order determining that, in lieu of the $51,000 in future damages the Bretts claimed they were entitled to, they were owed $5100. The next day, Brett sent Eilender a proposed draft of a letter motion to reargue. Pet'rs' Ex. 4. Eilender opposed making a motion to reargue, as did Jaroslawicz, who suggested the possibility of Brett appearing *pro se* before the Court if he insisted on making the motion against their advice. Pet'rs' Ex. 7. No motion to reargue the future damages issue was made.

Finally, Brett became dissatisfied with Eilender's work on the opposition to Defendant's Rule 50 and 59 motions, which Defendant filed on November 28, 2016. Opposition briefing was due on December 28, 2016. Trial Tr. 465:9–466:3. Brett and Eilender clashed over how to approach the brief. In the middle of the drafting process, Brett called Eilender to notify her that another law firm, Troutman Sanders LLP, was going to take over the briefing. Hr'g Tr. 48:9–12, Oct. 4, 2017. Eilender agreed. Hr'g Tr. 48:9–12, Oct. 4, 2017. On December 14, 2016, Eilender and the Bretts signed a stipulation for withdrawal and substitution of counsel. Resp'ts' Ex. 5. This stipulation was never filed with the Court. Sometime after the stipulation was signed, the Bretts paid Eilender and J&J their full one-third legal fee on the compensatory damages portion of the verdict. Hr'g Tr. 12:22–13:6, Oct. 4, 2017.

With new counsel, the Bretts filed their opposition to Defendant's Rule 50(b) and 59(e) motions on December 28, 2016. Defendant filed its reply on January 11, 2017. Before the motion could be decided, the Bretts and Defendant entered mediation on the punitive damages award. Hr'g Tr. 3:4–8, Sept. 15, 2017. During mediation, on March 22, 2017, Brett sent Eilender an email

3

seeking to "confirm" that she would not be paid pursuant to the retainer agreement, instead offering to pay her 10% of any settlement eventually reached, up to $50,000. Pet'rs' Ex. 10. Eilender did not accept. The Bretts eventually settled the punitive damages award at $575,900. Hr'g Tr. 3:17–18, Sept. 15, 2017. As Defendant did not challenge the jury verdict's award of compensatory damages, upon the settlement, all claims asserted had been resolved. The Court consequently ordered the action against Defendant discontinued on June 27, 2017.

Though she was not involved in the mediation, Eilender continued to represent Brett after she signed the stipulation substituting counsel. Specifically, Eilender negotiated to reduce the amount on Brett's Medicare lien. Hr'g Tr. 82:8–21, Oct. 4, 2017. Documents uploaded to the Court's Electronic Case Filing system continued to be sent to Eilender and J&J.

After the settlement was reached, Eilender asserted a lien over the funds, preventing their immediate disbursement by Defendant. Hr'g Tr. 3:21–4:4, Sept. 15, 2017. On September 15, 2017, the Court held a conference to resolve outstanding payments issues with Defendant. At the conference, the Bretts also asked the Court to resolve the value of Eilender's claimed lien, pursuant to N.Y. Judiciary Law § 475. Hr'g Tr. 4:18–5:9, Sept. 15, 2017. The Bretts claimed that Eilender is not entitled to any compensation because she was discharged for cause. Hr'g Tr. 5:2–5, Sept. 15, 2017. Eilender's counsel stated that his "client heard for the first time today that she was discharged for cause." Hr'g Tr. 14:4–5, Sept. 15, 2017.

A hearing to resolve the lien was held on October 4, 2017. At the hearing, the Bretts maintained that Eilender was not entitled to any compensation for her legal services because she was discharged for cause. Hr'g Tr. 2:25–3:8, Oct. 4, 2017. Eilender testified that she was never told she was discharged at all:

> THE COURT: Ms. Eilender, were you ever told in so many words that you were discharged?

>THE WITNESS: Never.
>
>THE COURT: Did you at any point come to an understanding that you were discharged?
>
>THE WITNESS: No.

Hr'g Tr. 81:22–82:2, Oct. 4, 2017. Eilender also testified, however, that she had signed a stipulation to the substitution of counsel:

>MR. BRETT: Ms. Eilender, in or about December of 2016, was there a substitution of counsel executed and signed and became effective?
>
>THE WITNESS: Yes.
>
>MR. BRETT: So Troutman was substituted for you as counsel?
>
>THE WITNESS: Yes.

Hr'g Tr. 83:14–19, Oct. 4, 2017. At the end of the hearing, the Court found that Eilender was not discharged for cause. Hr'g Tr. 84:7–8, Oct. 4, 2017. However, the Court reserved decision and requested briefing on whether Eilender was discharged without cause, and if she was, what relief she would be entitled to. Hr'g Tr. 85:20–86:8, Oct. 4, 2017.

## II. DISCUSSION

A client may discharge his or her attorney at any time, with or without cause. *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 263 (2d Cir. 2004). An act of a client "indicating an unmistakable purpose to sever relations" is sufficient to establish a discharge. *Costello v. Bruskin*, 58 A.D.2d 573, 574 (N.Y. App. Div. 2d Dep't 1977). If the client discharges an attorney retained on a contingency fee basis after the attorney has fully performed the duties set out in their contract, the attorney is entitled to the fee set out in the contract. *See McAvoy v. Schramme*, 238 A.D. 225, 228 (N.Y. App. Div. 1st Dep't 1933), *aff'd*, 263 N.Y. 548

(1933). If, on the other hand, the client discharges an attorney retained on a contingency fee basis before full performance and without cause, the two should agree to fix the former attorney's compensation at a set amount or a set percentage of the client's ultimate recovery. *Lai Ling Cheng v. Modansky Leasing Co.*, 73 N.Y.2d 454, 457–58 (1989). In the absence of such an agreement, the discharged attorney is limited to recovery on a *quantum meruit* basis. *Universal Acupuncture*, 370 F.3d at 263; *Cohen v. Grainger, Tesoriero & Bell*, 81 N.Y.2d 655, 658 (1993). Under *quantum meruit*, the discharged attorney can only recover the fair and reasonable value of the services rendered, even if that amount is less than the fee provided for in the retainer agreement. *Lai Ling Cheng*, 73 N.Y.2d at 457–58. The factors considered in determining the value of the services rendered include "the difficulty of the matter, the nature and extent of the services rendered, the time reasonably expended on those services, the quality of performance by counsel, the qualifications of counsel, the amount at issue, and the results obtained." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 148 (2d Cir. 1998). The contingency rate of the original retainer agreement is a factor as well. *Smith v. Boscov's Dep't Store*, 192 A.D.2d 949, 950–51 (N.Y. App. Div. 3d Dep't 1993); *see also Liddle Robinson, LLP v. Garrett*, 720 F.Supp.2d 417, 425 (S.D.N.Y. 2010).

There is no need to determine the *quantum meruit* value of Eilender's services in this case because this Court finds that Eilender was never discharged. The Bretts submit no evidence showing Eilender was discharged, while Eilender disputes she was ever discharged. Eilender claims that she heard for the first time that she was discharged for cause at the September 15th conference. Hr'g Tr. 14:4–5, Sept. 15, 2017. At the October 4th hearing, Eilender testified that she was never told she was discharged. Hr'g Tr. 81:22–24, Oct. 4, 2017. Supporting Eilender's contention that she was never discharged is the fact that, with Brett's knowledge and acquiescence,

she continued to represent Brett in negotiations with Medicare arising from the incident well into 2017. Hr'g Tr. 82:8–21, Oct. 4, 2017.

The Bretts point out, and Eilender admits, that Eilender signed a stipulation for the withdrawal and substitution of counsel on December 14, 2016. Resp'ts' Ex. 5. But this stipulation does not show a discharge occurred. In fact, under New York law, a stipulation of withdrawal and a discharge are two distinct ways of ending an attorney-client relationship. *See Farage v. Ehrenberg*, 124 A.D.3d 159, 165 (N.Y. App. Div. 2d Dep't 2014) ("There are different ways that attorney-client relationships can be ended. One way is for the client to discharge the attorney . . . . A second way is for the attorney and client to execute a Consent to Change Attorney or for counsel to execute a stipulation of substitution . . . ."). Further, the stipulation did not effect a withdrawal because it was never filed with the Court. An attorney of record may only withdraw or be substituted in the manner prescribed by statute, *Moustakas v. Bouloukos*, 112 A.D.2d 981, 983 (N.Y. App. Div. 2d Dep't 1985), and the relevant statute here requires that a stipulation to the substitution of counsel be filed with the Court, *see* N.Y. C.P.L.R. § 321(b) (McKinney); *see also* Vincent Alexander, Practice Commentaries (2011). The unfiled stipulation does suggest that Eilender and Brett had a previous conversation where Brett sought to replace her on the case. But in light of Eilender's testimony that the Bretts never discharged her, Eilender's continued work for Brett on his Medicare lien, and the lack of any documentation showing discharge, the Court instead credits Eilender's interpretation of the document — as an agreement that new counsel would take over the post-trial opposition motion and the appeal, the latter of which she was not obliged to handle in any event pursuant to the retainer agreement. The Court finds that the Bretts did not discharge Eilender and are therefore still bound under the terms of the parties' retainer agreement.

Hence, the Bretts owe Eilender and J&J the full one-third contingency fee on the punitive damages awarded, which amounts to $191,966.66.

Even assuming that the Bretts discharged Eilender during the post-trial motion stage of the suit, this Court would award Eilender $191,966.66. This Court witnessed Eilender's conduct of the case from its inception through the end of trial. Eilender expended over a year's worth of effort on the Bretts's case, effort which manifested in a very favorable jury verdict for the Bretts. Eilender has been awarded $95,483 in fees already. Hr'g Tr. 12:25–13:2, Oct. 4, 2017. An additional $191,966.66 would put her total fee at $287,449.66. Considering the terms of the parties' original retainer agreement in addition to the amount and quality of Eilender's work, $287,449.66 is a fair and reasonable valuation of the services Eilender rendered. The Court would thus fix the remaining value of Eilender's charging lien at $191,966.66.

### III. CONCLUSION

The escrow agent is respectfully directed to pay Respondents the sum of $191,966.66 plus any accrued interest. The Clerk of the Court is respectfully directed to close the case.

It is SO ORDERED.

Dated:  June 26, 2018
        New York, New York

Edgardo Ramos, U.S.D.J.